Vess A. Miller, No. 278020
Natalie Lyons, No. 293026
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com
[*additional counsel listed on signature pages*]

***Counsel for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KIMBERLY TAYLOR, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**TRIZETTO PROVIDER SOLUTIONS, LLC and CARES COMMUNITY HEALTH d/b/a ONE COMMUNITY HEALTH,**<br><br>**Defendants.** | **Civil Action No. ___________________**<br><br>**CLASS ACTION COMPLAINT FOR:**<br>**1. Negligence**<br>**2. Negligence per se**<br>**3. Breach of Implied Contract**<br>**4. Breach of Contract**<br>**5. Breach of Fiduciary Duty**<br>**6. Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff, Kimberly Taylor, individually, and on behalf of all others similarly situated (hereinafter "Plaintiff") brings this Class Action Complaint against Defendants, TriZetto Provider Solutions ("TriZetto") and Cares Community Health d/b/a One Community Health ("One Community") (together with TriZetto, "Defendants"). Plaintiff alleges the following on information and belief – except as to her own actions, counsel's investigations, and facts of public record.

## INTRODUCTION

1. Plaintiff Kimberly Taylor ("Plaintiff") brings this class action against Defendants for its failure to properly secure and safeguard the protected health information ("PHI") and personally identifiable information ("PII") (together, "Sensitive Information") of Plaintiff and other similarly situated patients of Defendant One Community Health, and thus TriZetto Provider Solutions.

2. One Community Health is a non-profit healthcare organization which provides medical, dental, and behavioral health services to its patients in California.

3. One Community Health chose to allow TriZetto access and control over its patients' highly sensitive personal and health information.[1]

4. On information and belief, the Data Breach occurred approximately between November 2024 and October 2, 2025. Following an internal investigation, on information and belief, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' personally identifying information ("PII") including names, Social Security numbers as well as personal health information, "(PHI"), including patient health

[1] See Exhibit A ("Ex. A")

insurance numbers, patient healthcare company names, primary or dependent insured information, and other demographic, health, and health insurance information. Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

5. Defendants continue to fail to promptly inform Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6. Defendants' continue to obfuscate the details of the breach as well as the nature of the breach and the threat it posed—refusing to tell patients exactly when the Breach occurred, how many people were impacted, how the breach happened, and why Defendants have not yet begun formal notification to victims that hackers had gained access to highly private Sensitive Information.

7. Defendants' failure to timely detect and report the Data Breach made patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9. In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendants violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

10. Plaintiff and members of the proposed Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their Sensitive Information. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff is a patient of Defendant One Community Health and a Data Breach victim, having received a breach notice – attached hereto as **Exhibit A**.

12. Accordingly, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendants' possession.

## PARTIES

13. Plaintiff Kimberly Taylor is a natural person and citizen of California, where she intends to remain. Plaintiff Taylor resides in Sacramento, California. Plaintiff Taylor has been a patient of One Community Health for over thirty (30) years.

14. Defendant, Cares Community Health d/b/a One Community Health, is a California corporation with its principal place of business located at 1500 21st Street, Sacramento, California 95811.

15. Defendant, TriZetto Provider Solutions, is a Missouri corporation with its principal place of business located at 3300 Rider Trail South, Earth City, Missouri 63045.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Defendants because, personally or through its agents, Defendants operate, conduct, engage in, or carried on a business in this State, maintain corporate offices in California, and committed tortious acts in this State.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this

is a class action wherein the amount in controversy exceeds $5,000,000, exclusive of interest and costs. At least one Plaintiff and Defendant are of different states, and there are more than one hundred (100) members in the proposed Class.

18. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district and continue to occur in this district.

## COMMON FACTUAL ALLEGATIONS

***TriZetto Provider Solutions***

19. TriZetto Provider Solutions is a Cognizant company which "aims to simply the business of healthcare. By combining intuitive products and customer-focused services with in-depth industry knowledge, we provide complete revenue cycle management services to empower our clients to succeed."[2]

20. TriZetto Provider Solutions operates "as a health insurance clearinghouse service to process insurance eligibility and claims information" for One Community Health.[3]

21. Therefore, TriZetto Providers Solutions must oversee, manage, and protect the Sensitive Information of its clients' consumers.

22. On information and belief, these third-party consumers, including One Community's patients, whose Sensitive Information was collected by TriZetto do not do any direct business with TriZetto.

23. TriZetto states that their parent company, Cognizant, "implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage of personal information. The data collected via our

[2] https://www.trizettoprovider.com/who-we-are/our-story (last accessed January 8, 2026).
[3] Ex. A

Sites is stored in a secure server…."[4]

24. Despite recognizing its duty to do so, on information and belief, TriZetto has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, TriZetto left significant vulnerabilities in its storage of Plaintiff's and the Class's Sensitive Information for cybercriminals to exploit and gain access to patients' Sensitive Information.

***One Community Health***

25. Cares Community Health d/b/a One Community Health is a not-for-profit community-based hospital which states its mission to be "[a]s one community, we empower all people through equitable, quality, patient-centered care."[5]

26. As part of its business, One Community Health receives and maintains the Sensitive Information of thousands of current and former patients. In doing so, One Community Health implicitly promises to safeguard their Sensitive Information.

27. In collecting and maintaining its current and former patients' Sensitive Information, One Community Health agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information.

28. Specifically, One Community Health acknowledges in their Notice of Privacy Practices that "[W]e are committed to protecting the confidentiality of your medical information."[6]

---

[4] https://www.cognizant.com/us/en/privacy-notice (last accessed January 8, 2026).

[5] https://onecommunityhealth.com/about/mission-and-vision/ (last accessed January 8, 2026).

[6] See Exhibit B ("Ex. B")

Despite recognizing its duty to do so, on information and belief, One Community Health has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees, including TriZetto, to prevent, detect, and stop breaches of its systems. As a result, One Community Health left significant vulnerabilities in its storage of Plaintiff's and the Class's Sensitive Information for cybercriminals to exploit and gain access to patients' Sensitive Information

***The Data Breach***

29. Plaintiff Taylor is a One Community patient. As a condition of treatment with One Community, Plaintiff Taylor provided her Sensitive Information. One Community used that Sensitive Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Sensitive Information to obtain treatment and care.

30. On information and belief, One Community provided TriZetto with Plaintiff's Sensitive Information. Thus, TriZetto was granted access to and custody of Plaintiff's Sensitive Information.

31. On information and belief, Defendants collect and maintain patients' Sensitive Information in their computer systems.

32. In collecting and maintaining the Sensitive Information, Defendants implicitly agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

33. On information and belief, TriZetto informed One Community, that One Community current and former patients may have been affected by the TriZetto Data Breach, which occurred as early as November 2024.[7]

[7] *See* Ex. A

34. Due to intentionally obfuscating language and a lack of formal notification, it is unclear how long it took Defendants to discover that they had been subject to a breach and how long cybercriminals had unfettered access to Plaintiff's and the Class's most sensitive information.

35. In other words, Defendants' cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly private Sensitive Information. One Community knew or should have known that granting TriZetto access to Plaintiff's Sensitive Information would result in a Data Breach given TriZetto's inadequate cybersecurity practice.

36. Despite their duties and alleged commitments to safeguard Sensitive Information, Defendants do not in fact follow industry standard practices in securing consumers' Sensitive Information, as evidenced by the Data Breach.

37. TriZetto itself has not sent Data Breach notices to Plaintiff and Class Members. Nowhere on TriZetto's website does TriZetto disclose to its customers that a cyberattack has occurred and that individual's Sensitive Information is at risk.

38. Therefore, on information and belief, the Data Breach was effectuated by means of the compromised credentials of TriZetto's own employees. One Community knew or should have known that granting TriZetto access to Plaintiff's Sensitive Information would result in a Data Breach given TriZetto's inadequate cybersecurity practice.

39. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

40. On information and belief, Defendants plan to offer complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

41. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

42. On information and belief, Defendants failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their patients' Sensitive Information. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendants were on Notice.***

43. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

44. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendants knew or should have known that their electronic records and customers' Sensitive Information would be targeted by cybercriminals.

45. In 2021, a record 1,862 data breaches occurred, resulting in approximately

293,927,708 sensitive records being exposed, a 68% increase from 2020.[8] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[9]

46. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [10]

47. Cyberattacks on medical systems and healthcare partner and provider companies like Defendants have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly." [11]

48. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry.

***Plaintiff Taylor's Experience***

49. Plaintiff Taylor is a One Community patient. As a condition of treatment with One Community, Plaintiff provided it with her Sensitive Information including but not limited to her

---

[8] https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises/ (last visited December 17, 2025).

[9] *Id.*

[10] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited December 17, 2025).

[11] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited December 17, 2025).

name, Social Security number, address, date of birth, health insurance member number, health insurance company's name, primary or dependent insured information, and other demographic health or health insurance information. One Community used that Sensitive Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Sensitive Information to obtain treatment and care.

50. On information and belief, One Community shared Plaintiff's Sensitive Information with TriZetto as part of its provision of services to One Community. In other words, One Community provided TriZetto with Plaintiff's Sensitive Information.

51. Plaintiff Taylor provided her Sensitive Information to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

52. Defendants deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

53. As a result of the Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

54. Plaintiff Taylor has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

55. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law

contemplates and addresses.

56. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

57. Plaintiff Taylor has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

58. Also following the Data Breach, Plaintiff has been experiencing a sharp increase in spam calls and texts, further evidencing that her Sensitive Information is now in the hands of cyber criminals.

59. Once an individual's Sensitive Information is for sale and access on the dark web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[12] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

60. Plaintiff Taylor has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

61. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendants.

62. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the

[12] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited December 17, 2025).

proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

63. The loss of the opportunity to control how their Sensitive Information is used;

64. The diminution in value of their Sensitive Information;

65. The compromise and continuing publication of their Sensitive Information;

66. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

67. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

68. Delay in receipt of tax refund monies;

69. Unauthorized use of stolen Sensitive Information; and

70. The continued risk to their Sensitive Information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Sensitive Information in their possession.

71. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

72. The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

73. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

74. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

75. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

76. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

77. Defendants disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity

fraud), all using the stolen Sensitive Information.

78. Defendants' failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Could Have Prevented the Data Breach***

79. Data breaches are preventable.[13] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[14] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[15]

80. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [16]

81. In a Data Breach like the one here, many failures laid the groundwork for the Breach.

***Defendants failed to adhere to FTC guidelines.***

82. According to the Federal Trade Commission ("FTC"), the need for data security

---

[13] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[14] *Id.* at 17.
[15] *Id.* at 28.
[16] *Id.*

should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of Sensitive Information.

83. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

84. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

85. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

86. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take

to meet their data security obligations.

87. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Violated HIPAA***

88. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [17]

89. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[18]

90. The Data Breach itself resulted from a combination of inadequacies showing Defendants failure to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

---

[17] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[18] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendants in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

91. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

***Defendants Fail to Comply with Industry Standards***

92. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

93. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

94. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

95. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both

the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

96. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for their patients. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

97. Plaintiff brings this class action, under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach affecting Defendants, including all those individuals who received notice of the breach.

98. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

99. Plaintiff reserves the right to amend the class definition.

100. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

101. **Numerosity.** Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

102. **Ascertainability.** Members of the Class are readily identifiable from information

in Defendants' possession, custody, and control;

103. **Typicality.** Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

104. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

105. **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

a. Whether Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants were negligent in maintaining, protecting, and securing Sensitive Information;

d. Whether Defendants breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

e. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether the Data Breach caused Plaintiff's and the Class's injuries;

g. What the proper damages measure is; and

h. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

106. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method.

## FIRST CAUSE OF ACTION
**Negligence**
**(Against Defendants on Behalf of Plaintiff and the Class)**

107. Plaintiff incorporates all previous paragraphs as if fully set forth below.

108. Plaintiff and the Class entrusted their Sensitive Information to Defendants on the premise and with the understanding that Defendants would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

109. Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

110. Defendants have full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiff and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

111. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from their inadequate security practices. After all, Defendants actively sought and obtained Plaintiff's and Class Members' Sensitive Information.

112. Defendants owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Sensitive Information in their care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Sensitive Information.

113. Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

114. Defendants also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

115. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

116. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential Sensitive

Information, a necessary part of obtaining services from Defendants.

117. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

118. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the Sensitive Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff's and the Class Members' Sensitive Information.

119. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120. Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

121. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendants conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

122. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendants hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the Sensitive Information —whether by malware or otherwise.

123. Sensitive Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

124. Defendants improperly and inadequately safeguarded the Sensitive Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

125. Defendants breached these duties as evidenced by the Data Breach.

126. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Sensitive Information by:

127. disclosing and providing access to this information to third parties and

128. failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

129. Defendants breached their duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

130. Defendants further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-

fact.

131. Defendants have admitted that the Sensitive Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

132. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

133. And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

134. Defendants' breach of their common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On behalf of Plaintiff and the Class)**

135. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

136. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII/PHI.

137. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class members' sensitive PII/PHI.

138. Defendants breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

139. Defendants violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

140. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

141. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

142. Defendants' duty to use reasonable security measures under HIPAA required

Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

143. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

144. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class Members would not have been injured.

145. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

146. Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

147. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of an Implied Contract**
**(Against Defendant One Community on Behalf of Plaintiff and the Class)**

148. Plaintiff reincorporates all previous paragraphs as if fully set forth below.

149. Plaintiff and the Class delivered their Sensitive Information to One Community as part of the process of obtaining treatment and services provided by One Community.

150. Plaintiff and Class Members entered into implied contracts with One Community under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. This contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendants was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to One Community.

151. In providing their Sensitive Information, Plaintiff and Class Members entered into an implied contract with One Community whereby One Community, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Sensitive Information.

152. In delivering One Community Sensitive Information to One Community, Plaintiff and Class Members intended and understood that One Community would adequately safeguard that data.

153. Plaintiff and the Class Members would not have entrusted their Sensitive Information to One Community in the absence of such an implied contract.

154. One Community accepted possession of Plaintiff's and Class Members' Sensitive Information.

155. Had Defendant One Community disclosed to Plaintiff and Class Members that Defendants did not have adequate computer systems and security practices to secure consumers'

Sensitive Information, Plaintiff and members of the Class would not have provided their Sensitive Information to Defendants.

156. One Community recognized that consumer's Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

157. Plaintiff and Class Members fully performed their obligations under the implied contracts with One Community.

158. One Community breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

159. One Community breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

160. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendants promised when Plaintiff and the proposed class entrusted Defendants with their Sensitive Information; and (h) the continued and substantial risk to Plaintiff's and Class Members'

Sensitive Information, which remains in the One Community's possession with inadequate measures to protect Plaintiff's and Class Members' Sensitive Information.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(Against TriZetto on Behalf of Plaintiff and the Class)**

161. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

162. Defendant TriZetto entered into various contracts with its affiliated organizations and hospital's, including One Community, to provide electronic health record management services to them.

163. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential medical information that Defendant TriZetto agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

164. Defendant TriZetto knew that if it were to breach these contracts with its healthcare provider clients, the clients' patients, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

165. Defendant TriZetto breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' Sensitive Information.

166. As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant TriZetto's failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

167. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

168. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

169. Given the relationship between Defendants and Plaintiff and Class members, where Defendants became guardian of Plaintiff's and Class members' Sensitive Information, Defendants became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' Sensitive Information; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

170. Defendants had a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

171. Because of the highly sensitive nature of the Sensitive Information, Plaintiff and Class members would not have entrusted Defendants, or anyone in Defendants' position, to retain their Sensitive Information had they known the reality of Defendants' inadequate data security practices.

172. Defendants breached their fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' Sensitive Information.

173. Defendants also breached their fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and

practicable period.

174. As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against Defendants, On Behalf of Plaintiff and the Class)**

175. Plaintiff incorporates all previous paragraphs as if fully set forth below.

176. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

177. Plaintiff and members of the Class conferred a benefit upon Defendants in providing the Sensitive Information to Defendants.

178. Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class. Defendants also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiff and the Class.

179. Under principals of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff and the Class's Sensitive Information because Defendants failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information to Defendants had they known Defendants would not adequately protect their Sensitive Information.

180. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, hereby demand a trial by jury on all issues so triable.

Dated: January 12, 2026

Respectfully submitted,

*/s/ Vess A. Miller*______
Vess A. Miller, No. 278020
Natalie Lyons, No. 293026
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

***Counsel for Plaintiff and the Proposed Class***